UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| BRIGID RHODES, | ) | |
| and | ) | |
| CHESTER RHODES, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No.: _____ |
| ACADEMIC EXPEDITIONS, INCORPORATED, | ) | DEMAND FOR JURY TRIAL |
| and | ) | |
| ANDREW SELINKA | ) | |
| Defendants. | ) | |

**Serve:**
    Academic Expeditions, Inc.
    1255 25th Street NW #429
    Washington, D.C. 20037

    Andrew Selinka
    1255 25th Street NW #429
    Washington, D.C. 20037

**COMPLAINT**

COMES NOW, Plaintiffs, Brigid Rhodes ("Ms. Rhodes") and Chester Rhodes ("Mr. Rhodes"), by counsel, for their Complaint against Defendants, Academic Expeditions, Incorporated (the "Corporation") and Andrew Selinka ("Mr. Selinka") (each a "Defendant" and collectively, the "Defendants"), and hereby states as follows:

### The Parties

1. Mr. Rhodes and Ms. Rhodes (collectively, "the Rhodes") are individuals domiciled in Virginia.

2. Academic Expeditions, Incorporated, is a New York corporation and, upon information and belief, maintains its principal place of business at 531 West 144th Street, Suite 40, New York, New York 10031.

3. Mr. Selinka is an individual domiciled in Washington, D.C.

### Subject Matter Jurisdiction

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy, excluding interest and costs, exceeds $75,000.

### Personal Jurisdiction

5. Personal jurisdiction over the Corporation exists in Virginia because, among other reasons, the Corporation regularly transacts business in the Commonwealth of Virginia and has contracted to supply services in Virginia.

6. Personal jurisdiction over Mr. Selinka exists in Virginia because, among other reasons, Mr. Selinka regularly transacts business in this Commonwealth and has contracted to supply services in Virginia.

### Venue

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this cause of action arose in Virginia Beach.

### Statement of Facts

**History of the Parties' Prior Business Relationship**

8. The Corporation provides customized educational travel programs both domestically and internationally. The Corporation began operating about 2003.

9. The Corporation was founded by Mr. Selinka, who is a majority shareholder and director of the Corporation.

10. In or around October 2004, the Corporation hired Mr. Rhodes as a tour guide and to provide sales and marketing services. In 2006, Mr. Rhodes was promoted to the position of Director of Educational Programming.

11. In or around the Spring of 2006, the Corporation hired Ms. Rhodes and she began providing various services for the Corporation, but was primarily charged with managing the Corporation's operations.

12. Because the Corporation was a small company with only a few employees, the Rhodes frequently took on additional responsibilities as various needs arose in order to ensure the Corporation continued operating. The nature of providing travel services required Ms. Rhodes to be virtually always available to handle any matter while a client was traveling.

13. At the time Ms. Rhodes began working for the Corporation, it was heavily in debt and struggling to maintain operations. Within one year, the Rhodes' guidance and leadership helped pull the Corporation out of debt and, on information and belief, the Corporation became profitable (although the Rhodes were never permitted to see the financial statements).

14. For several years, the Rhodes each received a small salary of approximately $1,000.00-$1,500.00 a month for the significant hours and effort they both expended on behalf of the Corporation.

15. Despite the Rhodes' nominal compensation, Mr. Selinka treated the Rhodes as "partners" and they made business decisions pertaining to the Corporation together.

**The Rhodes Receive An Ownership Interest in the Corporation**

16. In 2008, during a meeting with the Rhodes at the Stonewall Jackson Hotel & Conference Center in Staunton, Virginia, Mr. Selinka communicated that the Corporation was not able to increase their salaries to properly compensate each of them for the amount of work they were performing but would instead offer each an equity interest in the Company.

17. As compensation for the services they each performed for the Corporation, Mr. Selinka offered to the Rhodes, and Ms. Rhodes and Mr. Rhodes each accepted, a fifteen percent equity interest in the Corporation each, for a total of thirty percent equity interest in the Corporation ("Ownership Interest") (collectively, the "Transfer").

18. At the time of the Transfer, Mr. Selinka represented to the Rhodes that their Ownership Interests entitled each of them to share in the Corporation's profits and losses, exercise voting rights, and enjoy those other rights and responsibilities commensurate with such an equity interest.

19. In reliance on Mr. Selinka's representation that they each received an Ownership Interest in the Corporation, Ms. Rhodes and Mr. Rhodes continued to perform services for the Corporation for subpar wages.

20. On information and belief, immediately prior to the Transfer, Mr. Selinka owned 100% of the interest in the Corporation.

21. After the Transfer, the Rhodes each received sporadic annual "bonuses" from the Corporation that they were led—by the Corporation and Mr. Selinka—to believe were each of their share of distributions from the Company's profits.

22. Over the years, Mr. Selinka never provided the Rhodes with any verification that they were each receiving their full and just proportion of the Corporation's profits and losses.

However, because of the strong relationship between the Rhodes and Mr. Selinka, the Rhodes trusted that Mr. Selinka was properly managing the Corporation's finances and accurately reconciling the amounts owed to both Mr. Rhodes and Ms. Rhodes pursuant to their individual Ownership Interests.

**The Rhodes' Ownership Interest is Memorialized In Writing**

23. On or about September 12, 2009, the terms of the Transfer were memorialized in writing and endorsed by Mr. Rhodes, Ms. Rhodes, Mr. Selinka, and several witnesses (the "Interest Transfer Agreement").

24. A true and correct copy of the Interest Transfer Agreement is attached hereto as **Exhibit A**.

25. The Interest Transfer Agreement also conveyed various other rights to Mr. Rhodes and Ms. Rhodes including, without limitation, positions on the Board of Directors of the Corporation and, in the event of Mr. Selinka's death, the right to "all current and future assets of 'The Corporation'" and "full control of the Board of Directors."

**The Corporation Terminates the Rhodes' Employment**

26. Between 2013 and 2016, the relationship between the Rhodes and Mr. Selinka began to deteriorate due to, in large part, differences of opinions in business decisions.

27. Then, in June 2016, Mr. Selinka abruptly fired Ms. Rhodes from her position as Director of Operations after ten years with the Corporation.

28. Shortly after, in November 2016, Mr. Selinka also fired Mr. Rhodes from his position as Director of Educational Programming after twelve years with the Corporation.

29. Since each of their terminations, the Rhodes have been blocked from participating in the management of the Corporation in connection with their rights as shareholders and directors.

**The Corporation Fails to Provide Access to the Books and Records**

30. Following Ms. Rhodes' termination, she delivered a written demand to the Corporation to copy and inspect its books and records pursuant to New York Business Corporation Law ("New York BCL") § 624.

31. The Corporation refused to provide Ms. Rhodes with the demanded access to the books and records, alleging that Ms. Rhodes was not a shareholder.

## COUNT I
## BREACH OF FIDUCIARY DUTY – FAILURE TO MAKE DISTRIBUTIONS

32. The Rhodes repeat and re-allege Paragraphs 1-31 as if fully stated herein.

33. Ms. Rhodes received a 15% equity interest in the Corporation in exchange for work performed, and therefore she is entitled to a pro rata share of the Corporation's profits and losses in accordance with her equity interest.

34. Mr. Rhodes received a 15% equity interest in the Corporation in exchange for work performed, and therefore, he is entitled to a pro rata share of the Corporation's profits and losses in accordance with his equity interest.

35. The Corporation, and Mr. Selinka as the Corporation's President, each owe a fiduciary duty to Ms. Rhodes and Mr. Rhodes to pay distributions in accord with their individual equity interests in the Corporation.

36. Following the Transfer and continuing after the Rhodes' terminations, the Corporation has refused and failed to deliver to the Rhodes their pro rata distributions.

37. Mr. Selinka has refused and failed to cause the Corporation to make such distributions due to Mr. Rhodes and Ms. Rhodes, and upon information and belief, has taken such distributions due to the Rhodes for himself.

38. As a direct and proximate result of Mr. Selinka and the Corporation's failure to make pro rata distributions to the Rhodes, the Rhodes have each been damaged in the amount of the distributions they have not received.

## COUNT II
## VIOLATION OF NEW YORK BLC § 701

39. The Rhodes repeat and re-allege Paragraphs 1-38 as if fully stated herein.

40. New York BCL § 701 provides that "the business of a corporation shall be managed under the direction of its board of directors…."

41. Pursuant to the Interest Transfer Agreement, Mr. Rhodes and Ms. Rhodes are directors of the Corporation.

42. Following the Rhodes' involuntary terminations from the Corporation, the Corporation and Mr. Selinka are not permitting the Rhodes to manage the business affairs of the Corporation and exercise their respective rights as directors of the Corporation.

43. Accordingly, the Corporation and Mr. Selinka have breached their statutory duties and are in violation of New York BCL § 701.

## COUNT III
## BREACH OF CONTRACT – FAILURE TO DELIVER EQUITY
## (Alternative to Count I)
## (As to Andrew Selinka only)

44. The Rhodes repeat and re-allege Paragraphs 1-43 as if fully stated herein.

45. In the alternative to Count I, Mr. Selinka breached the oral and written contract with the Rhodes to deliver an equity interest in the Company to each of them in exchange for work performed.

46. Mr. Rhodes and Ms. Rhodes each performed the work agreed to by the parties.

47. Pursuant to the Interest Transfer Agreement, Mr. Selinka had a duty to deliver to Ms. Rhodes 15% of his equity interest in the Corporation.

48. Pursuant to the Interest Transfer Agreement, Mr. Selinka had a duty to deliver to Mr. Rhodes 15% of his equity interest in the Corporation.

49. Mr. Selinka failed to deliver to Ms. Rhodes 15% of his equity interest in the Corporation.

50. Mr. Selinka failed to deliver to Mr. Rhodes 15% of his equity interest in the Corporation.

51. As a result of Mr. Selinka's breach of the Transfer and Interest Transfer Agreement, the Rhodes have each been damaged in that they each do not possess the equity interest agreed to by the parties.

## COUNT IV
## VIOLATION OF NEW YORK BCL § 624
### (as to Academic Expeditions only)

52. Ms. Rhodes repeats and re-alleges Paragraphs 1-51 as if fully stated herein.

53. Ms. Rhodes sent a written demand to Academic Expeditions to inspect and copy the Corporation's books and records pursuant New York BCL § 624.

54. Ms. Rhodes provided written notice of her demand at least five (5) business days in advance.

55. The Corporation refused to permit Ms. Rhodes an opportunity to inspect the requested books and records and continues to refuse Ms. Rhodes such access.

56. At all relevant times, Ms. Rhodes satisfied the statutory requirements of New York BCL § 624 necessary to assert standing for her claim to inspect and copy the Corporation's books and records.

57. Accordingly, the Corporation has breached its statutory duties to allow such copying and inspection and is in violation of New York BCL § 624.

### COUNT V
### ACCOUNTING IN EQUITY

58. The Rhodes repeat and re-allege Paragraphs 1-57 as if fully set forth herein.

59. Mr. Rhodes and Ms. Rhodes are shareholders and directors of the Corporation.

60. Mr. Selinka is a majority shareholder and director of the Corporation and maintains complete control of the Corporation's finances.

61. The Corporation, and Mr. Selinka as director of the Corporation, each owe a fiduciary duty to Mr. Rhodes and Ms. Rhodes.

62. The Corporation and Mr. Selinka have refused to distribute the full and fair pro rata distributions of the Corporation to Mr. Rhodes and Ms. Rhodes.

63. Therefore, the Rhodes move the Court to order an accounting to review and "true-up" the shareholders' individual accounts to make sure that each has been allocated his/her due share of Company distributions.

**Damages and Relief Requested**

WHEREFORE, Brigid Rhodes and Chester Rhodes, by counsel, hereby move and pray this Court enter judgment against Academic Expeditions, Incorporated and Andrew Selinka as follows:

1. Injunctive relief against the Corporation, ordering it to:

    a. amend all tax returns the Corporation has filed since 2008 to issue an IRS Schedule K-1 to both Mr. Rhodes and Ms. Rhodes properly accounting for each of their respective fifteen percent (15.00%) ownership interests in the Corporation for each tax year since 2008;

    b. properly issue and record Mr. Rhodes' and Ms. Rhodes' respective equity interests in the Corporation;

    c. permit Mr. Rhodes and Ms. Rhodes to participate in the management of the Corporations' business affairs;

2. A full accounting of the Corporation's finances and shareholder distributions;

3. The Corporation's payment of all unpaid profits and distributions owed to Mr. Rhodes and Ms. Rhodes pursuant to their respective 15.00% ownership interests in the Corporation;

4. Joint and several compensatory and consequential damages in the amount of $400,000.00;

5. The Rhodes' attorney's fees and costs; and

6. Such other and further relief as to the Court may seem just and equitable.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38 and Local Rule 38, the plaintiff demands a trial by jury.

                                      Respectfully Submitted,

                                      **BRIGID RHODES, and**
                                      **CHESTER RHODES**

                                      By:   /s/ Christopher D. Davis
                                               Of Counsel

Christopher D. Davis, Esq. (VSB No.: 74809)
Julia A. Rust, Esq. (VSB No.: 87270)
PIERCE MCCOY, PLLC
101 West Main Street, Suite 101
Norfolk, Virginia 23510
Telephone: (757) 286-2903
Facsimile: (757) 257-0387
*Counsel for Plaintiff*

**Exhibit A**

**Interest Transfer Agreement**



# ACADEMIC EXPEDITIONS

This letter hereby attests to the current distribution of all said held stock and subsequent ownership of Academic Expeditions, Inc (a privately held subchapter S Corporation registered in New York State since October 2003) and herein referred to as " The Corporation".

I, Andrew Selinka the founder and former 100% owner of "The Corporation", do assert that from this date on Mr. Chester Rhodes and Ms. Brigid Rhodes each retain 15% ownership in "The Corporation" (30% in total) and have all rights and responsibilities commensurate with said ownership.

In addition to this distribution;

1. They shall share in full and fair distribution of end of fiscal year (FY December 31) net profits after all annual payables and debits are settled as pursuant to their ownership rights based upon their respective 15% ownership in "The Corporation" (30% in total).

2. Mr. and Mrs Rhodes both serve in full capacity upon the Board of Directors of "The Corporation" and have full rights and responsibilities commensurate with said membership including 15% each of all cast votes.

3. Upon any impending sale of "The Corporation", Mr. and Mrs. Rhodes will each receive 15% share of net sale price (offer minus all fees and related closing costs) once all company payables and debts are settled.

4. Upon my death I assert under no duress that complete ownership of all current and future assets of "The Corporation" revert without question to Mr. and Mrs. Rhodes and I make no further claims for myself or my family.

5. Upon my death I further assert that Mr. and Mrs. Rhodes will obtain full control of the Board of Directors of "The Corporation" to make all future decisions as they deem fit.

I attest to this proclamation that I agree and sign this day of my own free will.

| Signature | Print | Date |
|---|---|---|
| _Andrew Selinka_ | Andrew Selinka | 9/12/09 |
| _Witness_ | Naomi Starkman | 9/12/09 |
| _Brigid Rhodes_ | BRIGID RHODES | 9/12/09 |
| _Chester Rhodes_ | CHET RHODES | 9/12/09 |
| _Witness_ | Donald H Rhodes Jr. | 9/12/09 |